Per Curiam:*
Plaintiff was retired by the Army for physical disability in 1951 in the rank of Colonel. He had been Adjutant General of the Mississippi National Guard from 1936 to 1939 with the federally recognized rank of Brigadier General and on the basis of that service he requested the Army in January 1963 to advance him on the disability retirement list to the rank of Brigadier General pursuant to section 402(d) of the Career Compensation Act of 1949 (63 Stat. 818) which provides in part:
* * * That the disability retirement pay of any such member who shall have held a temporary rank, grade, or rating higher than the rank, grade, or rating held by him * * * at the time of his retirement * * * and who shall home served, satisfactorily m such higher rank, grade or rating as determvned by the Secretary concerned•, shall be computed on the basis of the monthly basic pay of such higher rank, grade, or rating to which he would.have been entitled had he been serving on active duty in such higher rank, grade, or rating * * * at the time of retirement * * *.[1] [Emphasis supplied.]
The Army disallowed plaintiff’s request in April 1963 on the grounds that the grade of Brigadier General which plaintiff held was not a temporary grade within the meaning of section 402(d) and that in any case plaintiff’s service in that grade was not satisfactory under the criteria set forth in a directive issued by the Secretary of the Army in 1949 *540 and in effect at the time of plaintiff’s retirement in 1951. Plaintiff challenges this determination and seeks to recover here the difference between the disability retirement pay of a Brigadier General and Colonel for the period from his retirement in 1951 to the date of judgment. He contends that his appointment as Adjutant General of Mississippi was a temporary one within the meaning of section 402(d); that a directive issued by the Secretary in 1962 setting forth criteria for satisfactory service, which was in effect at the time his application for advancement was considered by the Army, was applicable rather than the 1949 directive; and that his service as Brigadier General was satisfactory not only within the meaning of the 1962 directive but also within the meaning of the 1949 directive, should the latter be deemed applicable. As to these contentions, defendant concedes that plaintiff served in the “temporary grade” of Brigadier General' within the meaning of section 402(d) — a concession it makes in view of this court’s decisions in Grayson v. United States, 137 Ct. Cl. 779, 149 F. Supp. 183 (1957) and Grahl v. United States, 167 Ct. Cl. 80, 93-94, 336 F. 2d 199, 207 (1964), that service as a Brigadier General while acting as State-Adjutant General was service in a “temporary grade” for retirement purposes. It maintains, however, that the 1949 directive and not the 1962 directive was applicable, and that, in any event, under either directive plantiff’s service as Brigadier General did not represent satisfactory service within the meaning of the criteria therein set forth. The issues thus are (1) Whether the 1949 or the 1962 directive was applicable, and (2) whether or not plaintiff’s service as Brigadier General met the criteria of the applicable directive.
The facts giving rise to the controversy have been stipulated and briefly are as follows: Plaintiff had served as a Captain in the Officers Eeserve Corps from 1917 to 1919. In early 1936 he was appointed Adjutant General of Mississippi pursuant to which he was federally recognized as a Brigadier General of the State’s National Guard, continuing in that post until November 19, 1939, when his appointment terminated. During this tour (which required his full time and *541 attention), he served on federal active duty for training in the following periods:
August 9, 1936-August 23, 1936.
July 6,1937-July 20,1937.
July 31,1938-August 14,1938.
July 2,1939-July 16,1939.
November 13, 1939-November 18, 1939.
In November 1939, just before the end of his tour of duty as Adjutant General, plaintiff applied for federal recognition as a Lieutenant Colonel in the National Guard for service in a vacancy in the National Guard Bureau in Washington. The then Secretary of War (who served in that capacity from 1936 to 1940) submitted a written statement in 1960 declaring that upon receipt of plaintiff’s application in 1939, he had reviewed plaintiff’s record for the previous four years, found it had been outstanding, “determined that * * * his service as Brigadier General had been highly satisfactory”, and thereupon directed that orders be issued placing him on duty with the National Guard Bureau for a period of three years. On November 20,1939 (the day after termination of his appointment as Adjutant General), plaintiff was federally recognized as a Lieutenant Colonel, National Guard of the United States; he was called to active federal duty in that rank in June 1940 and served until November 1947, receiving a temporary appointment to Colonel, Army of the United States, during that tour. In October 1949 he was appointed Colonel, National Guard of the United States and served on active duty in that rank from December 1949 until June 1950 and from July 1950 to May 31, 1951, when pursuant to the provisions of section 402 of the Career Compensation Act of 1949, he was retired from active service in the grade of Colonel by reason of physical disability. Since his retirement, he has received retired pay computed on the basis of 75% of the base pay of a Colonel with over 23 years of service.
On November 21, 1961, plaintiff filed his petition in this court seeking, pursuant to the provisions of section 402(d) of the Career Compensation Act, the difference between the disability retired pay of a Colonel with over 23 years of service and the disability retired pay of a Brigadier General with such service. At the time plaintiff filed his petition, no official *542 determination as to whether his .service in.the grade of Brigadier General was satisfactory within the meaning of section 402(d) had been made by the Army.[2] In accordance with a suggestion by defendant, plaintiff on January 23, 1963, by letter to the Adjutant General of the Army, requested “advancement on the permanent disability retirement list to the grade of Brigadier General, Retired”, based on the appointment to that rank which he had held- from 1936 to 1939 while he was Adjutant General of the State of Mississippi. Also at defendant’s suggestion, plaintiff'requested that further action in this court be suspended until the Army had acted on his application. The request was granted by order dated February 6,1963.
On April 5, 1963, plaintiff’s application to the Army for advancement on the disability retirement list was denied by the Secretary of the Army’s Ad Hoc Review Board, a panel of officers within the structure of the Council of Review Boards, which decision was approved by the Office of the Under Secretary in the following month. The Board determined first that plaintiff did not serve on active duty in the temporary grade of Brigadier General — a determination which, as previously indicated, defendant concedes is in error in view of Grayson and Grahl. The Board further determined that “even if the grade of Brigadier General which * * * [plaintiff] held during [that] period * * * were a temporary grade, he served on active duty during that period only for training and only for an aggregative period of approximately two months, * * * and that such service was both insufficient in duration and, in any case, inadequate in nature (since it was only active duty for training and was not active duty) to characterize it as satisfactory service on active duty within the meaning of pertinent statutes and within the meaning of the criteria set forth in Memorandum for The Adjutant General and the Army Personnel Board from the Secretary of the Army, dated 5 December 1949, in effect at the time of his retirement.”
*543 We turn now to the principal issue in the case — whether the 1949 directive of the Secretary was applicable in determining satisfactory service, as the Board decided, or whether his case is governed by a later directive issued in 1962 by the Under Secretary which was in effect at the time his case was considered by the Board and the official determination pertaining to satisfactory service made. The 1949 directive, which was in effect at the time of plaintiff’s retirement in 1951, provided in pertinent part as follows:
Subject: Policy Regarding Satisfactory Service for Computation of Retired Pay
1. For the purpose of determining “satisfactory service” in a higher rank or grade, for computation of retired, retirement, severance or equivalent pay, as the case may be, under the provisions of Sections 402, 403, 511 and 513 of the Career Compensation Act of 1949' (Public Law 351, 8,1st Congress), the following criteria will be used:
a. Service in the rank or grade must have been performed on active duty.
b. Service in a commissioned rank must normally have been of at least six months duration unless such service was performed during World War I, in which case the rank may have been held for any period of time between 6 April 1917 and 11 November 1918. Service for less than six months must have been performed in an assignment on active duty.
f. The policy outlined in memorandum from the Secretary of the Army, subject: Administration of Section 203, Public Law 810, 80th Congress, dated 29 July 1948, will be used in determining whether service was satisfactory, subject to the above criteria.
2. Subject to the policy established above, The Adjutant General is authorized to make necessary determinations except that the following types of cases will be referred to the Army Personnel Board for review and recommendation.
a. Cases in which the officer meets all other qualifications but did not serve six months in higher grade, except when grade was held in World War I.
^ ‡ ^ ‡
c. Cases involving advancement to or within general officer grade.
d. * * *
*544 The directive pertaining to satisfactory service which was in effect when plaintiff’s application for advancement on the retired list was filed and considered in 1963 was set forth in a Memorandum for the Chief of Staff from the Under Secretary of the Army, dated July 16, 1962, which provided in part:
Subject: Determination of Satisfactory Service for the purposes of determining Retired grade or computing Retired Pay.
1. The purpose of this memorandum is to set forth policy guidance for use in making determinations whether a member of the Department of the Army “Served on active duty satisfactorily” in the highest grade held for purposes of determining retired grade or computing retired pay.
2. These provisions shall be used in determining “satisfactory service in a higher grade or rank in all cases involving computation of retired, retirement, equivalent or severance pay, under the provisions of Title 10, USC sections 1212,1371,1372, 1401,1402, 3963, and 3964 and sections 611 and 513 of the Career Compensation Act of 1949 (P.L. 351 81st Congress) or any other pertinent laws. These determinations shall be based upon information contained in official records.
3. All cases, in which a satisfactory service determination must be made, will be forwarded to the Adjutant General. Final action will be taken by the Adjutant General in all those cases, where the member’s Service in the highest grade held is determined to be Satisfactory. All other cases will be forwarded by the Adjutant General to the Secretary of the Army’s Ad Hoc Review Board for final determination.
4. Service in the higher grade will be deemed to have been satisfactory for the purposes of these laws except in the following circumstances :
d. In case of a temporary commissioned grade (or equivalent grade) the member had served on active duty in such grade for less than six months. (This provision will not apply in physical disability cases.)
* * * % *
6. Notwithstanding the foregoing, The Secretary’s Ad Hoe Review Board may make exceptions to the above policy, if the case involves unusual or extenuating circumstances. This Board will consider each case on its own merits and its determinations will be based on *545 the overall service's of the member to include medical reasons which may have been a contributing or decisive factor in the reduction in grade, compassionate circumstances, length of time in grade, performance level, and other factors.
7. Nothing in this memorandum will authorize the consideration of any case by the Adjutant General or the Secretary’s Ad Hoc Review Board which was considered prior to the approval date of this memorandum.
8. This policy supersedes the following directive: Memorandum for Chief of Staff, United States Army, subject “Policy Regarding Satisfactory Service for computation of Retired Pay dated 1 October 1958.”[3]
These directives constitute, of course, a valid exercise of Secretarial discretion for under section 402(d) of the Career Compensation Act “the determination as to whether a service member has served satisfactorily in the highest temporary officer grade is to be made by the Secretary of the interested department of the Armed Forces. There are no restrictions on what criteria the Secretary may employ in making the determination, except, of course, that the criteria may not be arbitrary or capricious. * * * The Secretary is given the discretionary power to determine the character of service of each retiring service man under the Act. There is no reason why he [may or] may not include a quantitative factor in making that discretionary determination.” Roberts v. United States, 151 Ct. Cl. 360, 365 (1960). See also Colman v. United States, 155 Ct. Cl. 185, 292 F. 2d 283 (1961). Such a quantitative factor was imposed, it would seem, by sections 1 (a) and (b) of the 1949 directive which (contrary to plaintiff’s assertion) appear to require that the member have served at least six months on active duty in a higher grade as a prerequisite for obtaining a determination of satisfactory service in that grade. This requirement, however, was relaxed by section 4(d) of the 1962 directive which provided that the six-month limitation was not to apply in physical disability retirement cases; the reference to “physical disability cases” plainly means those instances in which the applicant is *546 retired for physical disability. Moreover, examination of the terms of the 1962 directive makes it apparent that the criteria therein contained for determining satisfactory service were designed to be applicable in all cases considered by the Ad Hoc Review Board, regardless of the criteria for-such service contained in earlier directives. Thus, section 2 of the 1962 directive specifically provides that the provisions of that directive “shall be uséd in determining satisfactory, service in a higher grade or rank in all cases involving computation of retired * * * pay * * * under the Career Compensation Act of 1949 * * * .” [Emphasis supplied.] Other sections, too, of the 1962 directive, including sections 3, 6, 7 and 8, likewise emphasize that the policies there set forth were to control in all cases considered by the Ad Hoc Review Board, with the one caveat — in section 7 — that the Board was precluded from considering any retirement case which had been considered at a prior date (an exception not applicable in plaintiff’s case). Nor is there any provision in the 1962 directive empowering the Board, in physical disability retirement cases, to require six months of active duty service in a higher grade as a pre-condition for a determination of satisfactory service in that grade. It is true that section 6 of the 1962 directive allows the Board to make exceptions to the policy set forth in that directive “if the case involves unusual or extenuating circumstances.” Thus, under that section the Board is required to “consider each case on its own merits and [to base] its determinations * * * on the overall service of the member to include medical reasons which may have been a contributing or decisive factor in the reduction in grade, compassionate circumstances, length of time in grade, performance level, and other factors.”. Quite obviously, this provision is not designed to' grant the Board authority to impose criteria which are more restrictive than those set forth in the directive; the language contemplates just the opposite. In short, there can be no question from a reading of the 1962 policy directive promulgated by the Secretary for the determination of satisfactory service that it was meant to apply to “all cases” coming before the Board after the date of its promulgation. Under no possible construction of the directive can the intention of the Secretary *547 be deemed to have excluded from its provisions cases of prior retirement where no determination as to satisfactory service had been made. This is emphasized by the fact that the Secretary excluded from the provisions of his 1962 directive those cases where a determination had previously been made, and only those eases. In such circumstances, it is inconceivable that the Secretary would not have expressly excluded from the provisions of the 1962 directive all cases of retirement occurring prior to its issuance, if that had been his intention. Defendant indicates, however, that had the Board applied the 1962 directive in plaintiff’s case, it would have given him preferential treatment over other officers retired for disability who had less than six months service in their higher temporary grade and whose cases had been considered prior to the issuance of the 1962 directive. It may be that the Secretary, in the exercise of his discretionary power, should have included a reservation in the 1962 directive to avoid the consequences to which the defendant points. But it is apparent from the 1962 directive that the Secretary decided to the contrary that the new policy waiving the six-month active duty service requirement in physical disability retirement cases was to apply to all cases henceforth considered under the Career Compensation Act of 1949 regardless of the time of retirement. It is clear, of course, that plaintiff’s rights must be determined by the law in effect at the time of his retirement, i.e., the Career Compensation Act of 1949. See e.g., Jones v. United States, 151 Ct. Cl. 119, 124-25, 282 F. 2d 906, 910-11 (1960), cert. denied 365 U.S. 880 (1961). This does not mean though that the Secretary having established policy criteria for determining satisfactory service under the Act may not later effect a retroactive relaxation of his criteria under that Act. Such a decision was one the Career Compensation Act authorized the Secretary in his discretion to make. See Roberts v. United States, supra.[4]
*548 Defendant also argues that in the 1962 directive the term “active duty” — the prerequisite to any determination of satisfactory service under the directive — did not cover the “active duty for training” in which the plaintiff engaged as his only active federal service as Brigadier General. This point is rested on A.R. 320-5, Dictionary of United States Army Terms, which has provided since 1961 (at least) that “active duty” is generally defined as “full time duty in the active military service of the United States, other than active duty for training'''’ (emphasis supplied) ; “active duty for training” is separately defined as “full time duty in the active military service of the United States for training purposes.” The argument is that the Secretary’s 1962 directive must have used “active duty” in the sense of this Army “dictionary.”
We cannot accede to this position. The 1962 directive was not the first of its kind and cannot be interpreted apart from its predecessors. It was designed to supersede the 1949 directive (as well as the similar 1954 and 1958 directives, fn. 3, supra) which, as we show in the footnote,[5] did not exclude active duty for training. There is no indication on the face of the 1962 directive that, for the first time, a distinction was being made between active duty not for training and active duty for training, and that the latter was no longer to be counted. We think that such a serious modification, if it were to be made, would be done explicitly or *549 within the four corners of the directive, not by expecting the reader to know and apply the general definition in the current dictionary contained in the Army Regulations. The dictionary itself warns, in substance, that it is not to be rigidly, mechanically, or universally applied.[6] . “Active duty” has often meant any type of full-time federal service, whether the duty be training duty or otherwise.[7] The 1961 Army Dictionary does not prevent the 1962 directive from being construed in that way.
The conclusion from what has been said is that the 1962 directive was applicable in plaintiff’s case; that he fully qualified under the provisions of that directive for advancement on the disability retired list to the rank of Brigadier General; and that the Board’s determination to the contrary, based on the provisions of the 1949 directive, was in error. Nor is the error cured by the Under Secretary’s approval of the Board’s determination: Once the Under Secretary had issued a directive establishing the criteria to be followed, it was incumbent upon him to abide by those criteria. E.g., Service v. Dulles, 354 U.S. 363 (1957); Vitarelli v. Seaton, 359. U.S. 535, 546-47 (1959); Shadrick v. United States, 151 Ct. Cl. 408, 433 (1960); Cole v. United States, 171 Ct. Cl. 178, 186-87 (1965). It follows that plaintiff’s motion for summary judgment must be granted and defendant’s motion denied, and that judgment is *550 entered for plaintiff for the difference between the disability retired pay of a Colonel with over 23 years of service and the disability retired pay of. a Brigadier General with such service. Plaintiff is entitled to recover this sum from and after May 31,- 1951, the date of his retirement, with the amount of his recovery to be determined under Rule 47(c).[8]
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on June 6, 1966, that judgment for the plaintiff be entered for $16,747.06.

This opinion incorporates, with some added discussion of “active duty", the opinion prepared, at the direction of the court under Rule 54(b), by Trial Commissioner Herbert N. Maleta.

 The laws relating to the armed services have since been codified and the above provision is presently contained in 10 U.S.C. § 1372 which reads in pertinent part as follows :
“Unless entitled to a higher retired grade under some other provision of law, any member of an armed force who is retired for physical disability under section 1201 or 1204 of this title * * * is entitled to the grade equivalent to the highest of the following * * * (2) The highest temporary grade or rank in which he served satisfactorily, as determined by the Secretary of the armed force from which he is retired.”

 This was in part because section 402(d) by its terms is applicable only to temporary rants and the Army was of the opinion that the Brigadier General rant which plaintiff had held was permanent and that, therefore, he was not entitled to be advanced to that rank pursuant to that statute. Cf. Grayson v. United States, supra; Grahl v. United States, supra.

 The 1958 directive superseded a directive issued on January 20., 1954 -which in turn superseded the 1949 directive. The 1954 and 1958 directives required at least six-month active duty service in the higher grade as a condition of “satisfactory service” in that grade, and contained no exception for physical disability cases.

 For a somewhat analogous situation where the Secretary'effected another retroactive relaxation of Army policy in physical disability retirement cases, see Schiffmam v. United States, 162 Ct. Cl. 646, 654-55, 319 F. 2d 886, 891 (1963). See also Caddington v. United States, 147 Ct. Cl. 629, 178 F. Supp. 604 (1959). No issue is presented here and no opinion is intimated as to whether or not the Secretary also possesses the power under the Career Compensation Act to make retroactive to the time of retirement new criteria *548 imposing more stringent requirements for determining satisfactory service than the criteria which were in effect at the time of retirement. See e.g., Slawson, Constitutional and- Legislative Considerations in Retroactive Lawmaking, 48 Calif. L. Rev. 216 (I960) ; Hochman, The Supreme Court and The Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692 (1960) ; Calabresi, Retroactivity: Paramount Powers and Contractual Changes, 71 Yale L.J. 1191 (1962). See also, Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn. L. Rev. 775 (1936).

 Like the 1962 directive, the 1949 memorandum simply required service “on active duty” without making any distinction between types of active duty. The Dictionary of U.S. Army Terms in effect when the 1949 directive was promulgated was TM 20-205, January 18, 1944. This dictionary contained no definition of “active duty for training” and its definition of “active duty” did not refer to or exclude active duty for training. The definition was: “Military service with full pay and regular duties. Persons absent from duty on account of sickness, wounds, leave, or other lawful cause are considered as still on active duty. Also called active service.” Defendant submits that soldiers engaged in fuU-time training do not have “regular duties” but this seems incorrect; their regular duties consist of training activities.

 The first paragraph of A.R. 320-5, Dictionary of United States Army Terms, dated January 13, 1961, provides : “General. a. These regulations are designed to assist in reaching a more common understanding of the meaning of terms used extensively in the Army. The terms and definitions contained herein are for general reference use throughout the united States Army. It is not intended that this material be used to establish military policy or doctrine or to reflect techniques or technical procedures; nor is it intended that the definitions replace detailed or complete treatments of technical subjects found in other publications.”

 When Congress codified Title 10 of the U.S. Code in 1956, it included a statutory “dictionary” of terms -which specifically defined “active duty” as meaning “full-time duty in the active military service of the united States. It includes duty on the active list, full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.” 10 U.S.C. § 101(23). The Army and Air Force Vitalization and Retirement Equalization Aet of 1948, 62 Stat. 1081, 1090, likewise defined “active federal service” as including “all periods of annual training duty * * The Career Compensation Aet of 1949, 63 Stat. 802, 807, provided that “any full-time training, training duty with pay * * *” performed by National Guard members “shall be deemed to be active duty in the service of the United States.”

 Defendant says that in the event of judgment for plaintiff, the statute of limitations should preclude his recovery for any period prior to sir years before the filing of the present petition — an argument presumably based on the “continuing claim” theory. However, that theory is not applicable here since Congress required a prior administrative determination of satisfactory service by the Secretary and, thus, the cause of action accrued as a whole only after final administrative decision. See e.g., Friedman v. United States, 159 Ct. Cl. 1, 6-11, 310 F. 2d 381, 384-87 (1962), cert. denied 373 U.S. 932 (1963).